Drevet Hunt (Bar No. 240487)
Email: dhunt@cacoastkeeper.org
Lauren Chase Marshall (Bar No. 324162)
Email: lauren@cacoastkeeper.org
CALIFORNIA COASTKEEPER
1100 11th Street
Sacramento, California 95814
Phone: (415) 606-0864

Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>          Plaintiff,<br><br>     v.<br><br>BENDER CCP, INC., a California corporation<br><br>          Defendant. | Case No.: 2:24-cv-06822-AH-SKx<br><br>**CONSENT DECREE [JS-6]** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal, and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant Bender CCP, Inc. ("Defendant") owns and operates an equipment repair and machining business at 2150 East 37th St., Vernon, CA 90058 under Waste Discharger Identification number 4 19I028079 (the "Facility");

**WHEREAS**, the Facility's industrial activities consist of spraying, grinding, welding, storing, receiving, and delivering equipment and products. The Facility is categorized under Standard Industrial Classification ("SIC") Codes 3541 (Machine Tools, Metal Cutting Types) and 3479 (Coating, Engraving, and Allied Services, Not Elsewhere Classified);

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility (the "General Permit" or the "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* (the "Clean Water

---

[1] Any references to the "General Permit" or the "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Act" or the "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on June 11, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the CWA and the General Permit;

**WHEREAS**, on August 12, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-06822 (the "Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the CWA for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River, the Los Angeles River Estuary, Queensway Bay, San Pedro Bay, and the Pacific Ocean (collectively, the "Receiving Waters");

**WHEREAS**, Defendant filed an Answer and Affirmative Defenses on December 3, 2024, and filed a First Amended Answer and Affirmative Defenses on January 3, 2025, denying the majority of the Plaintiff's allegations pertaining to violations of the General Permit and the CWA;

**WHEREAS**, since receiving the 60-Day Notice Letter, Defendant has spent approximately $110,000 and anticipates further spending at least an approximate $210,000 to improve storm water management at the Facility and implement this Consent Decree;

**WHEREAS**, Plaintiff and Defendant (collectively, the "Settling Parties" or the "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted.

4. For the purposes of entering into this Consent Decree, that LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.    OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, all applicable terms and

conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.    DEFINITIONS

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.      "BAT" means the Best Available Technology Economically Achievable.

b.      "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.      "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.      "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.      "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.      "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in the General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

g.      "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.      "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.      "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.      "Forecasted Rain Event" means a forecasted rain event with a twenty-five percent (25%) or greater probability of precipitation of 0.05 inches or greater as determined by the National Oceanic

and Atmospheric Administration (http://forecast.weather.gov/) for "90058, Central City East, Los Angeles, CA, USA."[2]

k.  "MIP" means a Monitoring Implementation Plan.

l.  "PPT" means Pollution Prevention Team.

m.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.  "SWPPP" means a Storm Water Pollution Prevention Plan.

r.  "Term" means the period between the Effective Date and the "Termination Date."

s.  "Termination Date" means the later of:

　　i.  June 30 following three (3) years from the Effective Date;

　　ii.  June 30 following one (1) year after the advanced BMPs described in Paragraph 14 and Paragraph 22, below are fully installed, operational, and optimized, if applicable;

　　iii.  seven (7) days from the conclusion of any Section IV proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 11.s.i and 11.s.ii; or

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=34.0189&lon=-118.2344&unit=0&lg=english&FcstType=graphical.

    iv. seven (7) days from Defendant's completion of all payments, BMP development and/or implementation obligations, Action Plan obligations, and document provisions required by this Consent Decree.

    v. Notwithstanding Paragraphs 11.s.i through 11.s.iv above, if the sampling results for samples taken at the Facility as required by this Consent Decree during four (4) consecutive QSEs demonstrate no "Exceedances" (as defined in Paragraph 21 below) for any parameter at any Discharge Point, and provided that all BMP development and implementation, Action Plan, documentary provision, and monetary obligations in this Consent Decree have been met and that there are no ongoing, unresolved proceedings or processes to enforce this Consent Decree, then the Termination Date of this Consent Decree shall be thirty (30) days from the date Defendant provides written notification to LA Waterkeeper of its right to terminate pursuant to this Paragraph.

  t. "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

  **A.** **STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

  12. <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and all applicable provisions of the General Permit and of the CWA.

13. <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

14. <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility:

    a.    Patch any areas of degraded material on the roof level of the Facility.

    b.    Bender shall take all commercially reasonable efforts to ensure that all exposed storage bins, including all bins located in the Facility's "Laydown Area" (which area is depicted in the site map included in the Facility's June 20, 2025 SWPPP), shall have integrated covers and shall not have holes that allow contents to escape. If Bender does not own a storage bin and, after taking all commercially reasonable efforts, Bender's current vendor is unable to provide a bin with an integrated cover and Bender is unable to find a different vendor who could provide such a bin, Bender shall instead cover the bin with a tarpaulin.

    c.    In addition to the Facility's current sweeping program, implement an enhanced sweeping program using walk-behind mechanical sweepers on all exposed hard-surface areas at least twice per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted

Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access.

d.   Employ and secure new wattles/filters/filtration socks (Filtrexx, Biochar, or other mutually agreeable equivalent) to remove sediments, metals, and organic materials in storm water discharged from the Facility at all drain inlets prior to the 2024-2025 Wet Season. Defendant shall, thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th.

e.   During each Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations.

f.   Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facility.

g.   Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall.

h.   Remove, and prevent the storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from any exposed areas across the entire property.

i.    Institute an equipment and vehicle maintenance program that ensures:

    i.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

    iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

j.    If Defendant elects, perform additional monitoring activities throughout the Facility to identify onsite and potential sources of offsite contributions of zinc and seek to eliminate those sources to reduce pollutants in storm water as follows:

    i.    Within ninety (90) days of the Effective Date, Defendant shall conduct an evaluation for potential onsite sources of zinc. This evaluation may be part of Defendant's Water Quality Based Corrective Action report required pursuant to Section XX.B of the General Permit. At a minimum, Defendant shall evaluate potential sources of zinc contributions from the Facility's galvanized surfaces; heavy equipment including forklifts and cranes; and materials used in and/or resulting from its industrial processes including, but not limited to, brass and other zinc alloys, coating materials, metal shavings, and scrap material.

ii.  Within ninety (90) days of the Effective Date, Defendant shall sample the Facility's roof-level materials for potential zinc contributions. Defendant shall provide complete laboratory results of such samples to LA Waterkeeper within five (5) days of receiving the laboratory report with the results. Within ten (10) days of LA Waterkeeper's receipt of the results, the Parties shall meet and confer about the same. During the meet and confer, the Parties shall discuss, at a minimum: the results, potential zinc contributions considering the same, and corrective actions required considering the same.

iii. If Defendant elects to sample for potential sources of offsite contributions of zinc, Defendant shall provide LA Waterkeeper with a written description of its proposed sampling protocol for review and comment within ninety (90) days of the Effective Date and in advance of any such sampling. For any sampling proposed pursuant to this Paragraph, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's proposed sampling protocol to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the sampling protocol, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the sampling protocol, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV

below. Any sampling for potential sources of offsite contributions of zinc shall be conducted in a scientifically defensible manner, including with repeated sampling in varying weather conditions. Defendant shall provide complete laboratory results of any such samples to LA Waterkeeper within fourteen (14) days of receiving the laboratory report with the results. Within ten (10) days of LA Waterkeeper's receipt of the results, the Parties shall meet and confer about the same. During the meet and confer, the Parties shall discuss, at a minimum: the sampling results, potential zinc contributions considering the same, and the potential selection and substance of any contemplated Level 2 ERA demonstration considering the same. If Defendant submits a Non-Industrial or Natural Background Source Demonstration for zinc exceedances to the Regional Board under Section XII.D.2 of the General Permit and if the Regional Board approves such Demonstration in writing without objection, Defendant shall no longer be responsible for preparing a[n] Action Plan(s) for zinc pursuant to Paragraph 22 below. If Defendant submits a Non-Industrial or Natural Background Source Demonstration for zinc exceedances to the Regional Board under Section XII.D.2 of the General Permit, LA Waterkeeper reserves the right to contest the same. If the Regional Board rejects or objects to Defendant's Demonstration and/or if Defendant's Demonstration is otherwise adjudged deficient, Defendant shall remain

1    responsible for preparing a[n] Action Plan(s) for zinc

2    pursuant to Paragraph 22 below.

3    k.   Defendant will utilize the Contech biofiltration system in the

4    Laydown Area and shall implement the required maintenance on

5    this system.  Defendant shall locate sample point 3 (S3) to ensure

6    that storm water samples will be tested after the storm water

7    passes through the Contech system and, post-installation, the

8    Newterra system referenced in Paragraph 14.p below.  The

9    quarterly maintenance performed on the Contech system by the

10   contractor shall be documented and photographed.  Defendant

11   shall provide such documents and photographs to LA Waterkeeper

12   within fourteen (14) days of LA Waterkeeper's request for the

13   same.

14   l.   Defendant has enclosed the air compressor room on the Facility's

15   roof level and relocated a dust collector on that level.  Ducting

16   from the dust collector has been modified and routed to a different

17   part of the roof of the Facility, i.e., the portion of the roof where

18   other dust collectors are located.

19   m.   Defendant has installed curbing on the ramp that runs from the

20   street level to the roof level of the Facility.  That curbing is

21   designed and shall be maintained to prevent water from flowing

22   down the ramp from the parking lot during storm events.

23   Defendant has re-routed storm water flow so that it flows into two

24   downspouts from the roof.  The bottom of those downspouts have

25   been designated as sample point 1 (S1) and sample point 2 (S2) in

26   the Bender SWPPP dated June 20, 2025.

27   n.   The downspouts that lead to S1 and discharge point 1 (D1) and S2

28   and discharge point 2 (D2) shall be fitted with Newterra Aquip

treatment systems. The systems shall be designed to meet the numeric action levels, numeric effluent limits, and all applicable requirements of the General Permit and of the CWA. The Facility shall work directly with Newterra on system design and installation. The systems shall be designed to treat all runoff from a Design Storm. The systems shall include a gauge to detect and record instances of bypass flow.

o.    Defendant has identified all exposed galvanized steel material on the roof of the Facility and, with the exception of small screws, clamps, and conduit, coated those identified galvanized steel surfaces in order to prevent potential zinc discharges from galvanized steel. With the exception of the materials specifically listed above, any additional exposed galvanized steel surfaces to be installed on the roof of the Facility shall be coated in order to prevent potential zinc discharges from galvanized steel.

p.    Defendant shall install a Newterra Storm Water Treatment System – equipment 25 FBEN upstream of S3 and discharge point 3 (D3) within 10 months after the Effective Date. The Newterra Storm Water Treatment System shall be designed to meet the numeric action levels, numeric effluent limits, and all applicable requirements of the General Permit and of the CWA. The Facility shall work directly with Newterra on system design and installation. The system shall be designed to treat all runoff from a Design Storm. The system shall include a gauge to detect and record instances of bypass flow.

q.    Within seven (7) days of each of the above BMPs being implemented, Defendant shall confirm to LA Waterkeeper in

writing, with photographs, that such BMP has been implemented as set forth above.

**B.    SAMPLING AT THE FACILITY**

15.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point during at least four (4) Qualifying Storm Events per Reporting Year, including, at a minimum, the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year. Such sampling shall take place as soon as practicable within the four (4) hour period required by the General Permit § XI.B.5. If a rain event greater than 0.1 inch per hour occurs within Defendant's normal business hours and Defendant is unable to sample because of insufficient discharge, then Defendant shall document its inability to sample by taking photographs during the rain event at each Discharge Point. Defendant shall maintain those photographs and its rain gauge/sensor data and produce such records within fourteen (14) days of receipt of a written request from LA Waterkeeper. Should Defendant fail to sample in a rain event greater than 0.1 inch per hour that occurs within Defendant's normal business hours and fail to photograph its inability to sample as described above, there will be a rebuttable presumption that the Facility discharged pollutants with an Exceedance (as defined below). Sample collection is not required outside of scheduled Facility operating hours in accordance with General Permit § XI.C.

16.    Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan

requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

17. <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

18. <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

19. <u>Reporting</u>. Defendant shall provide complete laboratory results of all storm water samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

**C. REDUCTION OF POLLUTANTS IN DISCHARGES**

20. <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[3]**

| Parameter | Limit Type | Limit | | Unit |
|-----------|-----------|-------|---|------|
| pH | NAL | Ins. Max. | 6<x<9 | S.U. |
| Oil & Grease | NAL | Ann. Avg. | 15 | mg/L |
| | NAL | Ins. Max. | 25 | |
| Total Suspended Solids | NAL | Ann. Avg. | 100 | mg/L |
| | NAL | Ins. Max. | 400 | |

---

[3] If the General Permit is revised during the Term to provide for a limit other than the corresponding limit reflected in Table 1 above, then the Parties shall meet and confer regarding new Table 1 limits.

| Iron | NAL | Ann. Avg. | 1.00 | mg/L |
|------|-----|-----------|------|------|
| Aluminum | NAL | Ann. Avg. | 0.75 | mg/L |
| Copper | NAL | Ann. Avg. | 0.0332 | mg/L |
| | NEL | Ins. Max. | 0.06749 | |
| Lead | NAL | Ann. Avg. | 0.262 | mg/L |
| | NEL | Ins. Max. | 0.094 | |
| Zinc | NAL | Ann. Avg. | 0.26 | mg/L |
| | NEL | Ins. Max. | 0.159 | |
| Nickel | NAL | Ann. Avg. | 1.02 | mg/L |
| Nitrate-nitrogen + Nitrite-nitrogen (N+N) | NAL | Ann. Avg. | 0.68 | mg/L |
| | NEL | Ins. Max. | 8 | mg/L |
| Nitrite | NEL | Ins. Max. | 1 | mg/L |
| Nitrate | NEL | Ins. Max. | 8 | mg/L |

21. <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: (a) where the concentration of the same pollutant in any two (2) storm water samples from the Facility exceed any annual average NAL or instantaneous maximum NEL limit contained in Table 1; and/or (b) where the concentration of any pollutant in any one (1) storm water sample from the Facility exceeds an instantaneous maximum NAL limit contained in Table 1. Exceedances at S3, if any, will only be deemed to occur beginning in the 2026-2027 Wet Season.

22. <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of the General Permit, (b) storm water samples demonstrate an Exceedance as defined above, or (c) a treatment system discharges untreated storm water in smaller than a Design Storm, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants and/or the discharge in smaller than a Design Storm for the Facility and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of (a) the applicable

unauthorized non-storm water discharge, (b) the receipt of the laboratory report

demonstrating the Exceedance, or (c) the applicable discharge in an event smaller

than a Design Storm, as applicable.

       a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable unauthorized non-storm water discharge, and/or the applicable discharge in smaller than a Design Storm; (2) an assessment of the source of each pollutant exceedance, applicable unauthorized non-storm water discharge, and/or applicable discharge in smaller than a Design Storm; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), unauthorized non-storm water discharge prohibition, and/or Design Storm standard, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

       b.    <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.   <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.  <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii. <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, the storm water treatment systems, or components, or making changes to the operation and maintenance protocols for such systems or components, to provide more effective filtration treatment of storm water prior to discharge.

iv.  <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

v.   <u>Shelter</u>. If the Exceedance(s) occurred at S3, installing a storm-resistant shelter over the Laydown Area.

c.   <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent

Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 27.b.i below.

e.    <u>Action Plan Payments</u>. Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.    VISUAL OBSERVATIONS**

23.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

24.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, areas of outdoor industrial activity, and all other potential sources of industrial pollutants at the Facility. All Discharge Points

and sample points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and any other materials associated with Facility operations. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season to ensure that operational BMPs are being implemented, structural BMPs are in good condition and working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observations as to whether there are any non-storm water discharges from the Facility.

25.    <u>Visual Observations Records</u>. Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 23 and 24. Such records shall be kept in accordance with the forms included in the Facility's June 20, 2025 SWPPP, Appendix B. Defendant shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

26.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.    <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b.  Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.  Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.  Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.  Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.  Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.  Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated

Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.  Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

27.  SWPPP Revisions.

a.  Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.  A revised pollutant source assessment, including all elements required by Section X.G of the General Permit;

ii.  A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

iii.  Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation the Facility's Contech treatment system and BMPs required by this Consent Decree;

iv.  A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including without limitation accurately depicting all

discharge and sampling locations, drain inlets, and drainage areas and flows;

     v.    A MIP as required by Sections XI and X.I of the General Permit;

     vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

     vii.    A Training Program as described above in Paragraph 26.

    b.    <u>Additional SWPPP Revisions</u>.

     i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

     ii.    Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.    Review of SWPPP. For any SWPPP updates pursuant to Paragraphs 27.a and 27.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.    COMPLIANCE MONITORING AND REPORTING**

28.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice

will be provided by electronic mail to the individual(s) designated below at Paragraph 56. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

29.    <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.    Within three (3) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

30.    <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Fifteen Thousand Dollars ($15,000.00) within thirty (30) days of the Entry Date. In the event that, pursuant to Paragraph 28, there is

an additional Site Inspection in a given year to resolve a dispute, Defendant shall reimburse LA Waterkeeper an additional Five Thousand Dollars ($5,000.00) during such year, within thirty (30) days after any additional Site Inspection. In the event that, pursuant to Paragraph 11, the Consent Decree is extended beyond June 30, 2029, Defendant shall reimburse LA Waterkeeper an additional Five Thousand Dollars ($5,000.00) per year upon the applicable anniversary of the Effective Date beginning in 2029. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### F. ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

31. <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River Watershed, Defendant shall make a payment totaling Forty Thousand Dollars ($40,000.00) to Trout Unlimited made within thirty (30) days of the Entry Date, payable to Trout Unlimited and sent via overnight mail to Trout Unlimited, South Coast Chapter, 3154 Glendale Blvd, 117, Los Angeles CA 90039. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

32. <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of One Hundred Thirty-Nine Thousand Dollars ($139,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: California Coastkeeper and delivered by overnight carrier to California Coastkeeper Alliance,

Attn: Sean Bothwell, 1017 L St. PMB 308, Sacramento, CA 95814-3805. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Trout Unlimited, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 31. Payment shall be sent via overnight mail to Trout Unlimited, South Coast Chapter, 3154 Glendale Blvd, 117, Los Angeles CA 90039. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

34.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Trout Unlimited, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 31. Payment shall be sent via overnight mail to Trout Unlimited, South Coast Chapter, 3154 Glendale Blvd, 117, Los Angeles CA 90039.

**IV.    DISPUTE RESOLUTION**

35.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in

writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

36. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 35, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

37. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

38. <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

39. <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.     Each Party acknowledges that it has read and understands California Civil Code section 1542, which states: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Each Party hereby expressly waives and relinquishes all rights and benefits under section 1542 with respect to the releases granted herein.

41.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.     MISCELLANEOUS PROVISIONS

42.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

43.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

44.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter

into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

45. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

46. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

50. <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

52. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but

shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

53.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

55.    Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:
Los Angeles Waterkeeper
Benjamin Harris
Erina Kwon
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org
Phone: (310) 394-6162

<u>If to Defendant</u>:
Bender CCP, Inc.
Mike Potter
President/CEO
2150 E. 37th St.
Vernon, CA 90058
Email: mpotter@benderccp.com
Phone: (323) 232-2371

<u>And to</u>:

Alvin Thomas, Esq.
General Counsel Consulting Solutions
2525 Robinhood St.
Houston, TX 77005
Email: athomas@gccounsltingsolutions.com
Phone: (832) 452-8490

<u>With copies to</u>:
Drev Hunt
Lauren Chase Marshall
California Coastkeeper
1017 L St. PMB 308
Sacramento, CA 95814-3805
Email: dhunt@cacoastkeeper.org
Email: lauren@cacoastkeeper.org
Phone: (415) 606-0864

<u>With copies to</u>:
Stephen J. O'Neil
Sheppard Mullin
350 South Grand Ave., 40th Floor
Los Angeles, CA 90071-3460
Email: soneil@sheppardmulin.com
Phone: (213) 620-1780

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after

acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

57.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: August 13, 2025        By: _____

_____
Bruce Reznik
Executive Director
Los Angeles Waterkeeper

Dated: August _13th_, 2025        By: _____
Michael Potter
President/CEO
Bender CCP, Inc.

1

2   APPROVED AS TO FORM

3

4

5   Dated: August 13, 2025            By: _____

6

7                                        Lauren Chase Marshall

8                                        California Coastkeeper
                                         Attorney for Plaintiff
9                                        Los Angeles Waterkeeper

10

11  Dated: August 13, 2025            By: _____

12                                       Stephen J. O'Neil
                                         Sheppard Mullin Richter &
13                                       Hampton LLP
                                         Attorney for Defendant
14                                       Bender CCP, Inc.

15

16

17

18  **IT IS SO ORDERED.**
    **FINAL JUDGMENT**
19

20      Upon approval and entry of this Consent Decree by the Court, this Consent

21  Decree shall constitute a final judgment between the Plaintiff and Defendant.

22

23

24  Dated: OCTOBER 10, 2025      CENTRAL DISTRICT OF CALIFORNIA

25

26

27  _____

28  HONORABLE ANNE HWANG
    United States District Judge